# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

| | | |
|---|---|---|
| CRYSTAL A. LONG, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.: 1:16-cv-485-CHS |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
|    Defendant. | ) | |

## MEMORANDUM

I.    <u>Introduction</u>

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the Commissioner's final decision denying Crystal Long's ("Plaintiff") claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided by the Social Security Act.

The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Sixth Circuit [Doc. 12]. Pending before the Court are Plaintiff's Motion for Judgment on the Pleadings [Doc. 15] and Defendant's Motion for Summary Judgment [Doc. 17].

For the reasons stated herein, the Court **AFFIRMS** the Commissioner's decision. Accordingly, the Court **DENIES** Plaintiff's motion [Doc. 15] and **GRANTS** Defendant's motion [Doc. 17].

II.    Background

   A.    Procedural History

On June 25, 2013, Plaintiff protectively filed for DIB and SSI under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. § 401 *et seq.* and 42 U.S.C. § 1381 *et seq.*, based on degenerative disc disease, asthma, fibromyalgia, headaches, plantar fasciitis, heart arrhythmia, and depression[1] [Tr. 232-245, 274].[2]    Plaintiff's claims were denied initially and on reconsideration [Tr. 114-115, 149-154, 166-169].    On July 20, 2015, Plaintiff appeared via videoconference and testified at a hearing before Administrative Law Judge ("ALJ") Thomas Sanzi [Tr. 42-79].    On September 23, 2015, the ALJ issued a decision finding that Plaintiff was "not disabled," as defined in the applicable sections of the Act, because work existed in the national economy that she could still perform [Tr. 12-31].    On October 31, 2016, the Appeals Council denied Plaintiff's request for review [Tr. 1-4].    Thus, Plaintiff has exhausted her administrative remedies, and the ALJ's decision stands as the Commissioner's final decision subject to judicial review.    *See* 42 U.S.C. § 405(g).

   B.    Relevant Facts

*Plaintiff's Age, Education, and Past Work Experience*

 Plaintiff is currently a thirty-seven-year-old individual who performed past relevant work as a child monitor, cashier, fast food worker, and loader/unloader [Tr. 47-51, 64-65, 286-299].    At the time of her amended alleged onset date of June 25, 2013, Plaintiff was thirty-two

---

[1] The Court will focus its review of the record on the impairments that are relevant to Plaintiff's Motion for Judgment on the Pleadings [Doc. 15].

[2] An electronic copy of the administrative record is docketed at Doc. 8.

years old [Tr. 240].

*Plaintiff's Testimony and Medical History*

The parties and the ALJ have summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters as relevant to the analysis of the parties' arguments.

*The ALJ's Findings*

After considering the entire record, the ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2002.

2.  The claimant has not engaged in substantial gainful activity since June 25, 2013, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: Degenerative disc disease; left heel spur; bilateral plantar fasciitis; asthma; headaches; inflammatory arthritis; tachycardia; right knee osteoarthritis; obesity; anxiety disorder; depression; [and] borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she can frequently climb ramps and stairs, but never climb ladders, ropes, and scaffolds. The claimant can frequently balance, kneel, and crawl, but only occasionally stoop and crouch. She should avoid concentrated exposure to irritants such as fumes, odors, dust, and gases. The claimant is limited to work involving simple, routine tasks, in which she would be allowed to be off-task 5 percent of the day, in addition to normal breaks.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on November 29, 1980 and was 32 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from June 25, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 14-31].

III.    Analysis

A.  Standard of Review

The determination of disability under the Act is an administrative decision. To establish disability under the Social Security Act, a claimant must establish she is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. §§ 404.1520; 416.920. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful

activity she is not disabled; (2) if the claimant does not have a severe impairment she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment she is disabled; (4) if the claimant is capable of returning to work she has done in the past she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. §§ 404.1520; 416.920; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that she cannot return to her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which she can perform considering her age, education and work experience. *Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner made any legal errors in the process of reaching the decision. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (adopting and defining substantial evidence standard in the context of Social Security cases); *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way,

without interference by the courts.  *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs*., 790 F.2d 450 n.4 (6th Cir. 1986).

The court may consider any evidence in the record, regardless of whether the ALJ cited it.  *See Heston v. Comm'r of Soc. Sec*., 245 F.3d 528, 535 (6th Cir. 2001).  However, for purposes of substantial evidence review, the court may not consider any evidence that was not before the ALJ.  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  Furthermore, the court is not obligated to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

B.  Discussion

Plaintiff presents three issues for review: (1) whether the ALJ erred by giving little weight to Plaintiff's treating source opinions and giving more weight to the opinions of state agency consultative sources; (2) whether the ALJ erred by failing to adequately consider the opinion of the nurse practitioner; and (3) whether the ALJ erred by improperly relying on Plaintiff's Global Assessment of Functioning ("GAF") scores when assessing her mental impairments [Doc. 16 at 4].

*1.  Medical Opinions*

First, Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence [*Id.*

at 10-20].  Specifically, Plaintiff argues that the ALJ erred by giving limited-to-little weight to the opinions offered by Plaintiff's treating physicians, Dr. Frank Chandler and Dr. Jayne Crowe, and by giving greater weight to the opinions of state agency consultative sources [*Id.* at 10].

The Regulations require an ALJ to "evaluate every medical opinion" regardless of its source.  20 C.F.R. §§ 404.1527(c); 416.927(c).  However, every medical opinion is not treated equally, and the Regulations describe three classifications for acceptable medical opinions: (1) nonexamining sources; (2) nontreating sources; and (3) treating sources.  A nonexamining source is "a physician, psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case."  20 C.F.R. §§ 404.1502; 416.902.[3]  A nontreating source is described as "a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]."  *Id.*  Finally, the Regulations define a "treating source" as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]."  20 C.F.R. §§ 404.1502; 416.902 *accord Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).

An ALJ is required to give a treating source's medical opinion "controlling weight" if: "(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic

---

[3] The Social Security Administration revised its rules regarding the evaluation of medical evidence.  82 Fed. Reg. 5844-01, 2017 WL 168819.  The revised regulations went into effect on March 27, 2017, *id*., and are not applicable to this case.  *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law.  Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations.").

techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)); *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 696 (6th Cir. 2007). If the treating source's medical opinion is not entitled to controlling weight, the ALJ must determine the appropriate weight to give the opinion based upon consideration of the factors in 20 C.F.R. §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6) and must give "good reasons" that are supported by the evidence in the record and sufficiently specific to permit "meaningful review of the ALJ's application of the rule." *Gayheart*, 710 F.3d at 376 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (internal citations omitted)).

An ALJ is not bound by the findings of state agency physicians or psychological consultants, but is required to consider their opinions. 20 C.F.R. §§ 404.1527(e); 416.927(e); Soc. Sec. Rul. 96-6p. The Regulations explain that "[s]tate agency medical and psychological consultants and other program physicians . . . are highly qualified . . . experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i); 416.927(e)(2)(i). However, opinions from nontreating sources and nonexamining sources are never assessed for controlling weight. *See Gayheart*, 710 F.3d at 376. An ALJ may afford weight to a nontreating or nonexamining source, "but only if a treating-source opinion is not deemed controlling." *Id.* The ALJ must evaluate a state agency physician's medical opinion in light of the factors provided in 20 C.F.R. §§ 404.1527(a)-(d) and 416.927(a)-(d) and explain the weight given to his or her opinion. 20 C.F.R. §§ 404.1527(e)(2)(ii); 416.927(e)(2)(ii).

*a. Dr. Chandler's Opinion*

In this case, Plaintiff sought treatment from Dr. Chandler since at least 2007 for an assortment of ailments, including asthma, degenerative disc disease, chronic headaches, depression, fatigue, diffuse nerve pain, fibromyalgia, and sinus tachycardia [Tr. 389-408, 686-714]. On January 15, 2014, Dr. Chandler completed a Medical Source Statement in which he opined that Plaintiff could lift and carry one to five pounds frequently and six to ten pounds occasionally but never more than ten pounds [Tr. 715]. He opined that Plaintiff could sit, stand, or walk less than one hour during an eight-hour workday and less than one hour at a time [*Id.*]. Dr. Chandler also opined that Plaintiff could never bend, push, or pull and could only occasionally use her hands for gross or fine manipulation [*Id.*]. He indicated that Plaintiff suffered from moderate to severe pain and would need more than three breaks per day and to lie down between one and two hours per day [Tr. 716-717]. Dr. Chandler opined that Plaintiff could not reliably attend a full-time job without missing more than two days per month [Tr. 715]. He further opined that Plaintiff would frequently be precluded from performing various mental work-related activities, including understanding and carrying out simple or detailed instructions; performing activities within a schedule and maintaining regular attendance; sustaining an ordinary routine; working in coordination with or proximity to others without being distracted by them; interacting appropriately with peers and supervisors; and adapting to ordinary stress or changes in the workplace [Tr. 716].

Dr. Chandler submitted a second Medical Source Statement on May 27, 2015 [Tr. 986-987]. Although similar in many respects, this second opinion had some additional limitations. For example, Dr. Chandler opined that Plaintiff could now sit, walk, or stand less than fifteen

minutes at a time and needed to lie down for two to four hours once or twice per day [*Id.*].  Dr. Chandler also opined that Plaintiff's impairments frequently affected her ability to  concentrate [Tr. 987].

After reviewing Plaintiff's treatment history with Dr. Chandler and the findings in his Medical Source Statement [Tr. 22, 27-28], the ALJ explained the weight that he assigned Dr. Chandler's opinions as follows:

> Dr. Chandler's opinions are not entitled to controlling weight in this case. Initially, a statement that an individual cannot work relates to a matter reserved to the Commissioner, and is entitled to no particular significance.  Furthermore, Dr. Chandler's opinions are extreme and are not adequately supported by the clinical examination findings, the claimant's activities, or her longitudinal treatment history.  Because Dr. Chandler's opinions rely primarily on the claimant's history and subjective complaints, rather than his professional observations, they are entitled to little weight.

[Tr. 28].

After reviewing the ALJ's decision and the record as a whole, the Court concludes that the ALJ correctly assessed Dr. Chandler's medical opinions and appropriately applied the treating source rule.  The ALJ determined that Dr. Chandler's opinions were unsupported by and inconsistent with the other evidence of record and, therefore, not entitled to controlling weight. The ALJ then gave good reasons in support of the decision to afford only little weight to Dr. Chandler's opinions.

First, the ALJ correctly observed that statements Dr. Chandler made to the effect that Plaintiff would not be able to work a full-time job were not entitled to any particular significance because they addressed an issue reserved to the Commissioner [Tr. 28, 715].  *See* 20 C.F.R. §§ 404.1527(d)(1); 416.927(d)(1) (statements that a claimant is "disabled" or "unable to work" are not considered medical opinions, and, instead, are findings on issues reserved to the

Commissioner); Soc. Sec. Rul. 96-5p, 1996 WL 374183; *see also* Report and Recommendation entered in *King v. Astrue*, No. 3:10-cv-306, 2011 WL 2181964, at *5 (E.D. Tenn. May 2, 2011), and adopted by the Court, 2011 WL 2181499 (E.D. Tenn. June 3, 2011)  (doctor's assessment that the claimant could not work eight hours per day was an opinion on an issue reserved to the Commissioner and was of no special significance).

Plaintiff contends that Dr. Chandler made no "definitive assertion Plaintiff cannot work a full-time job" and instead opined that her impairments would lead to "chronic absenteeism" [Doc. 16 at 15].  The Court is not persuaded.  First, Dr. Chandler opined that Plaintiff would be able to work less than an eight-hour workday [Tr. 715, 986].  As this Court has previously observed, a doctor's opinion that a Plaintiff cannot work eight hours a day is "an alternative way of stating that the Plaintiff [is] unable to work."  *King v. Astrue*, 2011 WL 2181964, at *5 (citing *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 493 (6th Cir. 2010)).  Second, even if the Court accepted Plaintiff's characterization of Dr. Chandler's opinion as addressing potential absenteeism only, statements about how often a claimant might miss work address an issue reserved to the Commissioner, and thus, are not medical opinions.  *See Robbins v. Comm'r of Soc. Sec.*, No. 1:15-cv-247-SKL, 2017 WL 782890, at *13 (E.D. Tenn. Feb. 28, 2017) (finding that doctor's opinion that a claimant would be unable to work three days a month was an opinion on a non-medical matter).

As a second basis for the weight that he afforded Dr. Chandler's opinions, the ALJ found that the work-related limitations contained in the opinions were inconsistent with the clinical findings from Plaintiff's examinations and the medical evidence as a whole [Tr. 28].  *See* 20 C.F.R. §§ 404.1527(c)(4); 416.927(c)(4) ("Generally, the more consistent an opinion is with the

record as a whole, the more weight we will give to that opinion."). For example, Dr. Chandler attributed Plaintiff's limitations, in part, to her lumbar degenerative disc disease [Tr. 715]. However, as the ALJ noted elsewhere in his decision, Plaintiff's diagnostic test results revealed only mild or minimal findings [Tr. 22]. The ALJ specifically noted that an April 5, 2011 lumbar spine MRI ordered by Dr. Chandler revealed "mild disc bulge and mild degenerative disc disease at L3-L4, but no spinal canal or neural foraminal stenosis, and no ankyloses" [Tr. 22, 404]. Additionally, clinical findings did not support Dr. Chandler's opinions that Plaintiff could only occasionally use her hands for manipulation [Tr. 715, 986]. As the ALJ noted, x-rays of Plaintiff's hands were normal, and her treatment records contained no evidence of stiffness or swelling [Tr. 23, 993, 999, 1011, 1017, 1039, 1042]. During a consultative examination, Plaintiff had normal strength in her extremities and normal grip [Tr. 23, 668]. She also displayed normal gross and fine motor coordination [*Id.*]. As the ALJ noted, "the absence of persistent stiffness, swelling, or decreased grip strength" belie Dr. Chandler's opinion that Plaintiff has any manipulative limitations [Tr. 23].

The ALJ also found it significant that several physical examinations revealed normal motor and sensory functioning, which undermined the extreme postural limitations reflected in Dr. Chandler's opinions [Tr. 22]. For example, examinations in September 2013 and April 2014 showed negative straight-leg raising and intact strength, sensation, and muscle tone [Tr. 22, 668, 719]. At the April 2014 examination, Plaintiff had only minimal pain in her lumbar area [Tr. 719]. Dr. Homero Rivas, a pain management specialist, noted in June 2015 that Plaintiff had normal range of motion, normal sensation, and no joint tenderness, despite having some muscle tenderness [Tr. 22, 1048]. Furthermore, as discussed below, the ALJ found that Dr. Crowe's

treatment notes did "not demonstrate significant abnormalities in range of motion, strength, or sensation. . . ." [Tr. 23, 993, 999, 1011, 1017, 1039].

The medical evidence of record also contradicted Dr. Chandler's opinions regarding Plaintiff's mental limitations, including that her conditions frequently precluded her ability to understand and carry out simple instructions, affected her ability to concentrate, and caused lapses in memory [Tr. 716-717, 987]. For example, as the ALJ noted, during a consultative psychological examination Plaintiff "performed rapidly and efficiently on tests of psychomotor functioning, demonstrated adequate frustration tolerance and excellent persistence, and her concentration and recall appeared generally intact" [Tr. 19, 680].

Additionally, the ALJ found that the "extreme" limitations contained in Dr. Chandler's opinions were inconsistent with Plaintiff's daily activities [Tr. 28]. *See Gault v. Comm'r of Soc. Sec.*, 535 F. App'x 495, 496 (6th Cir. 2013) (concluding that the ALJ properly rejected treating doctor's opinion in part because it was inconsistent with the claimant's daily activities). As the ALJ noted, Plaintiff was the primary caretaker for her thirteen-year-old disabled daughter and five-year-old son [Tr. 18, 26, 60, 271, 303, 665, 679, 737]. She described taking care of her daughter as a "full-time" job that occupied her "almost all the time" [Tr. 665, 679]. Plaintiff reported that her daughter depended on her for everything [Tr. 271, 303, 665]. For example, she lifted her daughter often, helped her with dressing and bathing, and pushed her in a wheelchair [Tr. 26, 271, 307, 665, 679, 737]. Plaintiff also reported a range of other activities, including driving up to twenty-five minutes at a time, shopping, taking her son to school, cooking, doing laundry, dusting, loading the dishwasher, going to the movies, and visiting family members [Tr.

18, 26, 44-45, 666, 679]. As the ALJ observed, these activities are inconsistent with the limitations reflected in Dr. Chandler's opinions.

Considering the lack of supporting objective evidence, the ALJ concluded that Dr. Chandler based his opinions primarily upon Plaintiff's subjective complaints [Tr. 28]. An ALJ is entitled to give less weight to a medical opinion that is based upon a claimant's subjective statements. *See Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 473 (6th Cir. 2013); *Bell v. Barnhart*, 148 F. App'x 277, 285 (6th Cir. 2005).

In her brief, Plaintiff contends that the ALJ "conflated his weighing of Dr. Chandler's opinions with a credibility analysis of Plaintiff's subjective complaints" [Doc. 16 at 13]. The Court finds Plaintiff's argument unpersuasive. The reasons that the ALJ gave for discounting Dr. Chandler's opinion are consistent with the regulatory factors for weighing medical opinions and with Sixth Circuit authority. *See* 20 C.F.R. §§ 404.1527(c)(2)-(4); 416.927(c)(2)-(4); *see also Keeler*, 511 F. App'x at 473 (finding that substantial evidence supported the ALJ's decision not to give controlling weight to a physician's opinion because the opinion conflicted with the physician's findings, was contradicted by other evidence in the record, and appeared to be based primarily on the claimant's subjective complaints).

Plaintiff also argues that the ALJ "should have identified the evidence he believed inconsistent with each functional limitation Dr. Chandler found, instead of offering broad, general conclusory statements" [Doc. 16 at 13]. However, as the Court outlined above, the ALJ described the relevant evidence that undermined Dr. Chandler's opinion throughout his opinion. There was no need to repeat that evidence when discussing Dr. Chandler's opinions specifically. *See Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) ("No doubt, the ALJ

did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion.").

After reviewing the ALJ's decision and the record as whole, the Court concludes that the ALJ correctly assessed Dr. Chandler's opinions and appropriately applied the treating source rule. The Court concludes that the ALJ properly weighed the applicable statutory factors when determining that Dr. Chandler's opinions were entitled to little weight. In addition, the Court finds that the ALJ explained the basis for affording little weight to Dr. Chandler's opinions and gave good reasons for the decision. Accordingly, the Court concludes that the ALJ did not err in his consideration of Dr. Chandler's opinions.

### b. Dr. Crowe's Opinion

The record also contains a Medical Source Statement completed by Dr. Crowe, Plaintiff's treating rheumatologist, in June 2015 [Tr. 1043-1044]. Dr. Crowe opined that Plaintiff could sit for one hour in an eight-hour day and stand or walk for only thirty minutes at a time [Tr. 1043]. She opined that Plaintiff could occasionally lift and carry one to five pounds, but never lift more than five pounds [*Id.*]. She stated that Plaintiff could never bend or perform fine manipulation but could occasionally push, pull, and perform gross manipulation [*Id.*]. Dr. Crowe indicated that Plaintiff could not reliably attend a full-time job without missing more than two days per month [*Id.*]. Unlike Dr. Chandler, Dr. Crowe did not believe that Plaintiff's impairments affected her ability to concentrate, but she opined that Plaintiff suffered from severe pain and would need to take a thirty minute break per hour of work [Tr. 1043-1044].

After reviewing Plaintiff's treatment history with Dr. Crowe and the findings in her Medical Source Statement [Tr. 21-23, 28], the ALJ explained the weight that he assigned Dr. Crowe's opinion as follows:

> Like Dr. Chandler's opinion, Dr. Crowe's opinion is not entitled to controlling weight. This opinion is extreme and speculative, and it is not well supported by the medical evidence of record. In particular, the record does not demonstrate deficits in strength, range of motion, or dexterity that would support such significant postural and manipulative restrictions. Accordingly, I have also given Dr. Crowe's opinion little weight.

[Tr. 28].

After reviewing the ALJ's decision and the record as a whole, the Court concludes that the ALJ correctly assessed Dr. Crowe's opinion and appropriately applied the treating source rule. The ALJ determined that Dr. Crowe's opinion was unsupported by and inconsistent with the other evidence of record and, therefore, not entitled to controlling weight. The ALJ found that Dr. Crowe's opinion was entitled to little weight because the limitations were "extreme," "speculative," and "not well supported by the medical evidence of record" [*Id.*]. These are appropriate reasons for the ALJ to give diminished weight to a treating physician's opinion. The ALJ also cited specific examples of limitations that were not supported by Dr. Crowe's treatment notes or by the record as a whole.

In reaching this decision, the ALJ relied on much of the same evidence discussed above that undermined Dr. Chandler's opinions. For example, the ALJ noted that the lack of persistent stiffness, swelling, or decreased grip strength, and the lack of deficits in strength or range of motion undermined Dr. Crowe's opinion that Plaintiff had extreme postural and manipulative limitations [Tr. 23, 28]. In addition, although Dr. Crowe based her opinion upon a diagnosis of ankylosing spondylosis, the ALJ noted that Plaintiff's MRIs did not reveal any ankyloses and,

during a consultative examination, Plaintiff had no restrictive ankyloses of any major joints [Tr. 16, 404, 667, 1020].

In her brief, Plaintiff cites various treatment records that purportedly support Dr. Crowe's opinion and argues that these records provide "sufficient evidence" to support Dr. Crowe's opinion [Doc. 16 at 16]. However, the issue before the Court is not whether there is substantial evidence that could support Dr. Crowe's opinion. Rather, the issue is whether substantial evidence supports the ALJ's decision. Plaintiff must do more than simply point to countervailing evidence in the record. *See Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir. 2014) ("Merely marshalling evidence to suggest that [the claimant] is disabled, however, is insufficient; to prevail on appeal, [the claimant] must demonstrate that the ALJ's determination that he was not disabled is not supported by substantial evidence."). In fact, the ALJ discussed much of this evidence when considering Dr. Crowe's opinion. For example, Plaintiff points out that her treatment records reflected knee pain with popping, tenderness in her SI joints, and palpitations [*Id.*]. The ALJ found that Plaintiff had inflammatory arthritis, right knee osteoarthritis, and tachycardia [Tr. 15]. However, Plaintiff does not demonstrate how that evidence necessarily supports the extreme limitations found in Dr. Crowe's opinion.

Plaintiff disagrees with the weight that the ALJ assigned to Dr. Crowe's opinion, but that does not mean that the ALJ erred or that the ALJ's decision is not supported by substantial evidence. After reviewing the ALJ's decision and the record as whole, the Court concludes that the ALJ correctly assessed Dr. Crowe's opinion and appropriately applied the treating source rule. The Court concludes that the ALJ properly weighed the applicable statutory factors when determining that Dr. Crowe's opinion was entitled to little weight. In addition, the Court finds

that the ALJ explained the basis for affording little weight to Dr. Crowe's opinion and gave good reasons for the decision. Accordingly, the Court concludes that the ALJ did not err in his consideration of Dr. Crowe's opinion.

c. *State Agency Medical Consultants' Opinions*

Plaintiff next argues that the ALJ erred by affording greater weight to the opinions of the state agency consulting physicians and psychologists than to those of her treating sources [Doc. 16 at 10, 17-18].

In formulating Plaintiff's RFC, the ALJ considered various opinions from nontreating sources. For example, Dr. Reeta Misra, a nonexamining state agency physician, opined that Plaintiff could perform light work with frequent postural limitations [Tr. 27, 107-110]. Dr. Thomas Thrush, a nonexamining state agency physician, affirmed Dr. Misra's opinion in March 2014 [Tr. 27, 142-145]. The ALJ gave "some" weight to these opinions, but determined that a residual functional capacity ("RFC") for sedentary work with additional postural limitations was more appropriate [Tr. 27]. In September 2013, Dr. William Robinson, II, a state agency consultative physician, examined Plaintiff and opined that she had no sitting limitations, could stand for four hours per day, could walk for two hours per day, and could lift twenty pounds for three hours and ten pounds for five hours in an eight-hour workday [Tr. 27, 668]. The ALJ gave "considerable" weight to Dr. Robinson's opinion, but included greater lifting and standing limitations in the RFC [Tr. 27].

The record also contained opinions from state agency nontreating sources regarding Plaintiff's mental limitations. Dr. Robert de la Torre, Psy.D., a nonexamining state agency psychological consultant, opined that Plaintiff was unrestricted in her "ability to understand and

18

perform simple and detailed, but not multi-step detailed tasks" [Tr. 29, 110-112]. He also opined that Plaintiff had no social limitations and could sustain concentration, persistence, and pace with customary breaks [Tr. 111]. Dr. Edward Sachs, Ph.D., a nonexamining state agency psychological consultant, affirmed Dr. de la Torre's opinion in March 2014 [Tr. 145-146]. The ALJ gave considerable weight to these opinions, but also found that Plaintiff would be off task five percent of the day [Tr. 29]. In addition, David Caye, M.S., a state agency consultative examiner, administered a psychological evaluation of Plaintiff on September 19, 2013 [Tr. 29, 677-685]. Mr. Caye assigned Plaintiff a GAF score of 75 and opined that Plaintiff was unrestricted in her ability to understand, concentrate, and recall simple tasks, but was moderately to markedly restricted in her ability to do so with complex tasks [Tr. 681-682].[4] The ALJ afforded great weight to this opinion [Tr. 29].

Plaintiff argues that the ALJ erred by affording more weight to the opinions of the state agency consultants than to those of her treating sources [Doc. 16 at 10, 17-18]. After reviewing the record and the ALJ's decision, the Court concludes that the ALJ properly considered these medical opinions. An ALJ is not bound by the findings of state agency physicians, but is required to consider their opinions. 20 C.F.R. §§ 404.1527(e); 416.927(e); Soc. Sec. Rul. 96-6p. The Regulations explain that "[s]tate agency medical and psychological consultants and other program physicians . . . are highly qualified . . . experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i); 416.927(e)(2)(i). However, opinions from nontreating sources and nonexamining sources are never assessed for controlling weight. *See Gayheart*, 710 F.3d at 376. An ALJ may afford weight to a nontreating or nonexamining source, "but only if a treating-source opinion is not deemed controlling." *Id.* The ALJ must evaluate a state agency

---

[4] Dr. John Judd, Ph.D., reviewed Mr. Caye's evaluation and affirmed his conclusions [Tr. 683].

physician's medical opinion in light of the factors provided in 20 C.F.R. §§ 404.1527(a)-(d) and 416.927(a)-(d) and explain the weight given to his or her opinion. 20 C.F.R. §§ 404.1527(e)(2)(ii); 416.927(e)(2)(ii).

Plaintiff disagrees with the weight that the ALJ assigned to the medical opinion evidence, but that does not mean that the ALJ erred or that the ALJ's decision is not supported by substantial evidence. After reviewing the ALJ's assessment of the medical opinion evidence, the Court finds that the ALJ considered the consultative opinions provided by Dr. Robinson and Mr. Caye in detail and provided a sufficient explanation for the weight given. The ALJ also sufficiently considered and explained his reasons for the weight given to the nonexamining state agency consultants. Plaintiff has not identified an error in the ALJ's consideration of the medical opinion evidence that would entitle her to a remand. Upon review of this record, the Court concludes that substantial evidence supports the ALJ's assessment of the medical opinion evidence.

### 2. *Nurse Practitioner Grotefendt's Opinion*

Plaintiff next argues that the ALJ "failed to consider adequately" an opinion offered by her primary care provider, nurse practitioner Madeline Grotefendt F.N.P. [Doc. 16 at 20].

Ms. Grotefendt, whom the ALJ noted was Plaintiff's "current primary care provider," submitted a Medical Source Statement on June 3, 2015 that was substantially similar to the one submitted by Dr. Chandler during the same month [Tr. 28-29, 988-989]. There were some differences, however. For example, Ms. Grotefendt opined that Plaintiff needed to lie down three times per day, elevate her legs for ten minutes three times per day, rest for an hour in the morning and afternoon, and avoid vibrations [Tr. 28-29, 989].

After reviewing Plaintiff's treatment history with Ms. Grotefendt and the findings in her Medical Source Statement [Tr. 22, 27-28], the ALJ explained the weight that he assigned Ms. Grotefendt's opinion as follows:

> I have also given Ms. Grotefendt's opinion little weight. Initially, Ms. Grotefendt is not an acceptable medical source, which gives her opinion less persuasive weight. Moreover, like the opinions from Drs. Crowe and Chandler, this opinion is extreme and not well supported by the objective medical evidence of record. I also note that the record does not support a finding that the claimant needs to elevate her legs periodically throughout the day, and none of her other providers mentioned such a restriction.

[Tr. 29].

In her brief, Plaintiff argues that the ALJ erred by focusing on Ms. Grotefendt's status as a nurse practitioner, rather than applying the statutory factors in weighing her opinion [Doc. 16 at 20-22]. The Court finds Plaintiff's argument to be unpersuasive.

A nurse practitioner is not a treating sources as that term is defined in the Regulations. *See Hatfield v. Astrue*, No. 3:07-cv-242, 2008 WL 2437673, at *1-2 (E.D. Tenn. June 13, 2008) (noting that a nurse practitioner is not an "acceptable medical source" and cannot, therefore, be a treating source (citing 20 C.F.R. §§ 404.1502; 404.1513(a), (d)(1)). Rather, a nurse practitioner is defined by the Regulations as an "other source," who may provide evidence on the severity of a claimant's impairment. *Id.*; 20 C.F.R. §§ 404.1513(d)(1); 416.913(d)(1). The opinions offered by an "other source," such as a nurse practitioner, are not medical opinions and are not entitled to controlling weight. *Hatfield*, 2008 WL 2437673, at *2. An ALJ is, therefore, not required to give "good reasons" for the weight given to the opinion of a nurse practitioner and need only consider such an opinion and explain the weight given to the opinion. *See* Soc. Sec. Rul. 06-03p,

2006 WL 2329939, at *4-6; *see also Ceol v. Berryhill,* No. 3:15-cv-315-CCS, 2017 WL 1194472, at *6-7 (E.D. Tenn. Mar. 30, 2017).

Contrary to Plaintiff's argument, the Court finds that it was entirely appropriate for the ALJ to consider that Ms. Grotefendt was not an acceptable medical source and to give her opinion less weight on this basis. *See Meuzelaar v. Comm'r of Soc. Sec.*, 648 F. App'x 582, 584 (6th Cir. 2016) (noting that the opinion of a nurse or nurse practitioner "is entitled to less weight than a physician's opinion because a nurse is not an 'acceptable medical source'") (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007); 20 C.F.R. §§ 404.1513(d)(1); 416.913(d)(1)). Moreover, the Court finds that the ALJ appropriately considered Ms. Grotefendt's opinion and explained the weight that he gave it in light of the relevant regulatory factors. The ALJ explained that he found the opinion to be "extreme" and "not well supported by the objective evidence of record" and provided a specific example of such inconsistency [Tr. 29]. *See* 20 C.F.R. §§ 404.1527(c)(3)-(4); 416.927(c)(3)-(4); *see also Nash v. Astrue*, No. 3:07-cv-419, 2008 WL 4066097, at *6 (E.D. Tenn. Aug. 27, 2008) (finding that ALJ properly discredited opinion from nurse practitioner because it was not supported by objective medical evidence of record); *Valdes v. Colvin*, No. 1:16-cv-56-TAV-SKL, 2017 WL 473879, at *3 (E.D. Tenn. Feb. 3, 2017) (finding that ALJ properly discredited opinion from nurse practitioner because it was inconsistent with the record as a whole). Accordingly, the Court concludes that the ALJ gave Ms. Grotefendt's opinion appropriate consideration and adequately explained the weight that he afforded the opinion. Plaintiff is not entitled to relief on this issue.

*3. GAF Score*

Finally, Plaintiff argues that the ALJ's decision "improperly relied" on a GAF score that she was assigned as part of a consultative psychological examination [Doc. 16 at 23-25].[5]  As noted above, the ALJ gave great weight to the opinion of Mr. Caye in which he assessed Plaintiff with a GAF score of 75 [Tr. 29, 681].  The ALJ also observed that such a GAF score indicated "transient symptoms and slight, if any, functional impairment" [Tr. 29].[6]

Plaintiff seems to argue that the ALJ should not have considered the GAF score at all because she believes that GAF scores are "inherently unreliable" and "wholly subjective" [Doc. 16 at 23].  She argues that the ALJ's reliance on her GAF score "represents a major departure from . . . longstanding Agency policy" and accuses the ALJ of "abandon[ing] the stated policy position of the Commissioner" [*Id.* at 24].  She notes that the agency has stated that a GAF score "does not have a direct correlation to the severity requirements in [the] mental disorders listings" [*Id.* at 23-24 (citing 65 Fed. Reg. 50746, 50764-65)].

Plaintiff misunderstands the Commissioner's policy.  The section of the Federal Register that Plaintiff cites addresses how an ALJ evaluates whether a claimant's mental impairment meets the requirements of a Listed Impairment.  Plaintiff is correct to the extent that a GAF score is "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning" and is not dispositive of disability.  *See Graves v. Astrue*, No. 10-169-HRW, 2011 WL 1838688, at *3 (E.D. Ky. May 13, 2011) (quoting *White v. Comm'r of Soc.*

---

[5] The GAF scale is used to assess the social, occupational, and psychological functioning of adults.  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM–IV").

[6] According to the DSM-IV, individuals with GAF scores between 71-80 have symptoms which, if they are present, "are transient and expectable reactions to psychosocial stresses; [they have] no more than slight impairment in social, occupational, or school functioning."  *Id.* at 32.

*Sec.*, 572 F.3d 272, 276 (6th Cir. 2009)).  However, in this case, the ALJ did not conclude that Plaintiff's mental impairments failed to meet or equal a listing solely based upon a GAF score [Tr. 18-20].  Accordingly, the ALJ did not "abandon" the Commissioner's policy, and Plaintiff's argument is inapposite to the facts at hand.

Although GAF scores are not determinative of disability and do not have a direct correlation to the severity requirements in the mental disorders listings, an ALJ is nevertheless required to consider all of the evidence in the record.  *See* Report and Recommendation entered in *Brown v. Colvin*, No. 3:13-cv-659, 2016 WL 3920228, at *6 (M.D. Tenn. July 15, 2016), and adopted by the Court, 2016 WL 4127385 (M.D. Tenn. Aug. 3, 2016).  The Sixth Circuit has recognized that a GAF score may be helpful in assessing an individual's mental RFC.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006); *see also DeBoard v. Comm'r of Soc. Sec.*, 211 F App'x 411, 415 (6th Cir. 2006).  This is precisely the context in which the ALJ considered Plaintiff's GAF score in this case.  Plaintiff has not cited any relevant authority for her contention that the ALJ cannot consider a GAF score.  In fact, the ALJ may consider a claimant's GAF score as one factor in the overall disability determination. *See* Report and Recommendation entered in *Long v. Astrue*, No. 3:10-0273, 2011 WL 1258407, at *20 (M.D. Tenn. Mar. 7, 2011), and adopted by the Court, 2011 WL 1258507 (M.D. Tenn. Mar. 30, 2011) (finding that the ALJ properly considered GAF scores as one factor, among many, in determining that a claimant had moderate mental limitations).

Contrary to Plaintiff's contention that her GAF score of 75 was a "key factor" in the ALJ's decision, the Court concludes that the ALJ properly considered the GAF score as one of many factors.  The ALJ also considered the clinical findings from Plaintiff's mental status

examinations, the work-related limitations contained in Mr. Caye's opinion, the opinions of the state agency consultants, the absence of any hospitalizations or emergency room treatment for acute exacerbations, and the lack of any treatment by a psychiatrist or other mental health provider [Tr. 25-26, 29]. Moreover, a reading of the ALJ's entire decision reflects that the GAF score was not particularly significant to the ALJ. The ALJ devoted one sentence in a thirty-one page decision to note that Plaintiff's GAF score of 75 reflected "transient symptoms and slight, if any, functional impairment" [Tr. 29]. Notwithstanding this observation, the ALJ's RFC assessment included significant work-related limitations to account for Plaintiff's mental impairments.

In sum, the Court finds no merit in Plaintiff's argument that the ALJ improperly relied on her GAF score and concludes that Plaintiff is not entitled to relief on this issue.

IV.    Conclusion

Having carefully reviewed the administrative record and the parties' briefs filed in support of their respective motions, the Court concludes that there is substantial evidence in the record to support the ALJ's findings and the Commissioner's decision, and that neither reversal nor remand is warranted on these facts. With such support, the ALJ's decision must stand, even if the record also contains substantial evidence that would support the opposite conclusion. *See, e.g.*, *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Accordingly, it is hereby **ORDERED** that Plaintiff's Motion for Judgment on the Pleadings [Doc. 15] is **DENIED,** the Commissioner's Motion for Summary Judgment [Doc. 17] is **GRANTED**, and the Commissioner's decision is **AFFIRMED**. This action is hereby **DISMISSED** and the Court directs the Clerk to **CLOSE** the case. A separate judgment will enter.

25

/s/Christopher H. Steger
UNITED STATES MAGISTRATE JUDGE